[Civ. No. 3963.   Third Appellate District.—December 14, 1929.]

## JOSEPH B. SWAN, Respondent, v. JOHN SMITH, Appellant.

Law & Overholt for Appellant.

Mayo Thomas and Leonard E. Thomas for Respondent.

FINCH, P. J.—The plaintiff commenced this action December 10, 1925, to recover the sum of $7,249.23 collected for him by the defendant.

In his answer the defendant "admits that between the 25th day of March, 1922, and June 24, 1922, he collected the sum of $7,249.23 belonging to plaintiff, but denies that he collected same on any agreement or understanding that

same was to be applied other than on indebtedness in the sum of $91,586.33 then due and owing defendant from the plaintiff." The answer alleges that the plaintiff's alleged cause of action is barred by the statute of limitations. By way of counterclaim it is alleged: "That on or about the 15th day of May, 1919, in the Dominion of Canada, plaintiff became indebted to this defendant in the sum of $91,586.33, for and on account of the sale of one-half of the issued capital stock of the Ajax Coal & Mining Company, a Canadian corporation, which said stock was then and there delivered to said plaintiff, who then and there agreed with the defendant to pay said defendant the sum of $91,586.33, no part of which has been paid excepting the sum of $73,835.56, and interest to December 7, 1921; that there is now due and unpaid from said plaintiff to this defendant the sum of $17,750.77, with interest from December 7, 1921."

Paragraph 4 of the court's findings reads as follows: "That in respect to the said defendant's counterclaim, this court finds that on or about the 15th day of May, 1919, plaintiff became indebted to the defendant in the sum of $91,586.33; that in partial payment of this said sum, and on or about the said 15th day of May, 1919, the said plaintiff delivered to this defendant his promissory note in the sum of $66,586.33, which said promissory note with interest thereon was duly paid in full to this defendant by the said plaintiff on or before December 28th, 1920; that in completing the payment of said sum of $91,586.33, as aforesaid, this said plaintiff assigned, endorsed and delivered to this defendant, on or about the 15th day of May, 1919, a certain secured promissory note, drawn by M. A. Brown and H. H. Brown and in the sum of $25,000, which said promissory note was given, endorsed and delivered by the said plaintiff and received and accepted by the said defendant as full and complete payment of the obligation of $91,586,33, as aforesaid; that the said plaintiff is not now, nor has he been subsequent to the 28th day of December, 1920, indebted to this defendant in any sum or at all."

Judgment was entered in favor of the plaintiff for the amount prayed for in the complaint and interest thereon, and the defendant has appealed.

In respondent's brief it is urged that he is not liable as an indorser on the Brown note, referred to in paragraph 4

of the findings, on the ground, among others, that the note was not presented for payment at the time it became due, but there was no such issue before the court. As said in appellant's reply brief, the cause of action stated in the counterclaim "is not an action against the endorser of the note but an action upon the original indebtedness." The issues made by the pleadings were whether the Brown note was received by the defendant as payment, in the amount of its face value, for the shares of stock sold to the plaintiff and whether plaintiff's cause of action was barred by the statute of limitations.

Relative to the purchase of the shares of stock, the plaintiff testified in part as follows: "We had a conversation . . . in which he said, 'Joe, I want to sell out to you and go back to Los Angeles.' . . . I told him that I couldn't buy him out, I didn't have the money. . . . He worked on my sympathies, and I said to him, 'Mr. Smith, the only way that I would consider about buying you out at this time would be if you will take the Brown note as part payment of the $25,000'; and he said he would be glad to do that, and made comments on his opinion of Mr. M. A. Brown's ability to pay, even though that business didn't pay out; under those conditions I agreed. . . . He brought the note over from the safe, turned it upside down, and he says, 'Now, as I am taking this as mine, I want you to endorse it to me so that I can handle it without bothering you.' " In a part of plaintiff's deposition, read by counsel for the defendant in cross-examination of the plaintiff, he testified, referring to the note: "I told him that he must take this, if I agreed to allow him to withdraw, as his property, and he agreed to it. . . . He said he felt secure in the note, for the reason that M. A. Brown was a thrifty kind of fellow, and even if the store wouldn't pay it, he would get into something that would pay."

█ "The giving of a note or check of a debtor or a third party for the amount of a debt does not constitute payment unless there is an agreement between the parties that it shall be so accepted. . . . The general rule above stated does not require that in order to constitute the giving of a note or check a payment there shall be express words or writing agreeing that the instrument shall be absolute payment. The circumstances and the conduct of the parties

taken together may show an understanding that the paper is taken in satisfaction of the debt. . . . It is a question for the trier of facts in every case whether a note given for the amount of a debt was accepted as payment, and upon appeal the verdict of the jury or the finding of the trial court is conclusive as to the issue." (20 Cal. Jur. 920–928.)

The defendant was the agent of the plaintiff for the collection of the money for the recovery of which the action was brought. "The relation of principal and agent is fiduciary in character." (1 Cal. Jur. 788.) "The acts of an agent are judged with almost, if not quite, the same strictness as those of a trustee." (*Williams* v. *Lockwood*, 175 Cal. 598, 601 [166 Pac. 587, 588].) The duty of an agent to account for money in his hands belonging to his principal is similar to that of a trustee in possession of money belonging to the beneficiary of a trust. "Partnership is a branch of the law of agency, each partner having authority in partnership affairs to act . . . as agent for the other partners." (2 C. J. 425.) The statute of limitations applicable to an action for an accounting between partners, where one of the partners in possession of partnership property refuses to account therefor, is section 343 of the Code of Civil Procedure, which provides for a limitation of four years. (*Freeman* v. *Donohoe*, 65 Cal. App. 65, 81, 94 [223 Pac. 431].) The same section must be held applicable in this case, and it follows that no part of the plaintiff's cause of action was barred at the time the action was commenced.

The judgment is affirmed.

Plummer, J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 14, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 10, 1930.